**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**SANDRA BROWN, ON BEHALF OF**
**HERSELF AND THOSE SIMILARLY**
**SITUATED,**

    **Plaintiff,**

vs.                                                    **Case No.: 8:10-cv-1749-T-27AEP**

**GULF COAST JEWISH FAMILY**
**SERVICES, INC., A FLORIDA**
**CORPORATION,**

    **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

    **THIS CAUSE** comes before the Court for consideration of Defendant Gulf Coast Jewish Family Services, Inc.'s ("Gulf Coast or Defendant") Motion for Summary Judgment (Dkt. No. 13) and Defendant's Motion to Strike Affidavits of Leslie Thorson and Nancy Tyner Filed by Plaintiff in Response to Defendant's Motion for Summary Judgment (Dkt. No. 29). Upon consideration of all relevant filings and case law, it is respectfully **RECOMMENDED** that Defendant's Motion for Summary Judgment (Dkt. No. 13) be **GRANTED IN PART AND DENIED IN PART**, and that Defendant's Motion to Strike Affidavits of Leslie Thorson and Nancy Tyner Filed by Plaintiff in Response to Defendant's Motion for Summary Judgment (Dkt. No. 29) be **GRANTED IN PART AND DENIED IN PART**.

**I. Background**

On August 5, 2010, Plaintiff Sandra Brown filed a one-count Complaint and Demand for Jury Trial (Dkt. No. 1) against Defendant, seeking unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Dkt. No. 1 at 4). Plaintiff alleges that Defendant willfully failed to compensate her at time and one-half for all hours worked in excess of forty hours per week. (Dkt. No. 1 at 4). Plaintiff avers that she was not compensated for all the hours she worked because she was instructed to "record a daily thirty minute unpaid lunch break, even if no lunch break was actually taken by the employee." (Dkt. No. 1 at 3). It is undisputed that Defendant was an "employer" of Plaintiff, and that Plaintiff was an "employee" within the meaning of the FLSA. Defendant has not asserted any FLSA coverage or exemption defenses in this case.

On May 2, 2011, Defendant Gulf Coast moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 3.01(a). (Dkt. No. 13 at 1). Plaintiff filed a response in opposition, (Dkt. No. 28) which included the affidavits of former Gulf Coast employees Leslie Thorson ("Thorson") and Nancy Tyner ("Tyner") (Dkt. No. 28, Ex. B; Dkt. No. 28, Ex. C). Defendant subsequently filed a motion to strike these affidavits (Dkt. No. 29), and Plaintiff filed an opposition in response (Dkt. No. 34).

**II. Undisputed Facts**

Plaintiff Sandra Brown worked as a Mental Health Technician ("MHT") for Defendant Gulf Coast from February 2005 to May 12, 2010.[1] (Dkt. No. 1 at 1; Dkt. No. 13 at 10; Dkt. No.

---

[1] Although Defendant asserts that Plaintiff was terminated on May 22, 2010 (Dkt. No. 13 at 10), both her employee time sheets (Dkt. No. 14, Ex. 4 at 19-20) and an e-mail written by Defendant's Human Resources Director (Dkt. No. 15, Ex. 6) reflect that she was

15, Ex. 6).² Defendant is a non-profit agency that provides services to at-need individuals who suffer from mental health or substance abuse issues. (Dkt. No. 13 at 2). Defendant employs MHTs to provide direct care to its clients. (Dkt. No. 13 at 2). Plaintiff's job responsibilities as a MHT included a variety of duties such as driving clients to outings and appointments, assisting clients with their daily living skills, ensuring clients are on site, performing medication checks, and doing other work around the facilities as assigned. (Dkt. No. 13 at 2). Defendant employed its MHTs during the relevant time period as hourly, non-exempt employees. (Dkt. No. 15 at 13, 27, 34). Defendant scheduled three shifts in a work day with each shift overlapping the other shift by thirty minutes. (Dkt. No. 14 at 26; Dkt. No. 15 at 13). A full-time MHT typically worked five shifts in a work week. (Dkt. No. 15 at 33-34). Defendant posted a schedule with shift times each month and the MHTs were permitted to sign up for additional overtime hours. (Dkt. No. 15 at 31, 33). Defendant provided on-the-job training to MHTs which included instruction on how to keep track of their time. (Dkt. No. 15 at 34-35). All MHTs were required to keep a record of their own hours on a time sheet that was submitted on a bi-weekly basis. (Dkt. No. 14 at 34; Dkt. No. 17 at 21). Prior to submission of the time sheet, the MHT was required to sign the time sheet certifying that the time sheet "was an approved & correct statement for time worked and distribution for th[e] pay period." (Dkt. No. 14 at 43-44).

Defendant had a company policy whereby each employee was entitled to take a thirty-minute unpaid lunch break and two fifteen-minute paid breaks during a scheduled shift. (Dkt. No.

---

terminated on May 12, 2010. Therefore, for purposes of this Report and Recommendation the Court will refer to May 12, 2010 as Plaintiff's date of termination.

² All citations to depositions reference the respective deposition's internal page numbers.

14 at 36, 67, 85-86). Occasionally, the MHT job required attendance to a client's needs at unscheduled times; therefore, there was no assigned time for lunch breaks. (Dkt. No. 16 at 12-13; Dkt. No. 17 at 17, 19). The MHTs were responsible for coordinating among themselves when they would take a lunch break to ensure that one MHT was always monitoring the facility. (Dkt. No. 16 at 10-13, 23; Dkt. No. 17 at 13, 17, 19; Dkt. No. 15 at 58). If one of the MHTs on duty was off-site with a client, the other MHT could still be able to take her lunch break by requesting that a MHT from a nearby facility cover for her. (Dkt. No. 16 at 12-13). There was no requirement that a MHT stay on-site during a lunch break, and it was common for them to go off-site for their lunch breaks. (Dkt. No. 14 at 94-95; Dkt. No. 17 at 13; Dkt. No. 16 at 11, 13).

Sometime in 2008, Plaintiff and other MHTs began recording their time sheets by only recording the time in and time out without specifically writing down when a lunch break was taken. (Dkt. No. 15 at 22-23). They would then calculate the total time for the day and subtract thirty minutes from the total if a lunch break was taken. (Dkt. No. 14 at 43; Dkt. No. 15 at 22-23). Defendant noticed the thirty-minute discrepancy and called in a few of the employees who were recording time using this method to find out if they were "doing their math wrong." (Dkt. No. 15 at 23). The employees who were called in stated that they subtracted thirty minutes from the total to reflect their lunch break. (Dkt. No. 15 at 23). Defendant stated that for purposes of auditing, employees should specifically depict their lunch breaks on time sheets. (Dkt. No. 15 at 23). On July 27, 2009, Defendant handed out and posted a memo ("July Memo") which was titled "Clocking in and out for lunch." This memo informed employees that they had to show evidence of clocking in and out during shifts and during lunch. The memo also stated that

4

employees were required to take a lunch break and must depict the break on the time sheets. (Dkt. No. 14, Ex. 6).

### III. The Temporal Scope of Plaintiff's Claim

#### A. Undisputed Time Periods

Plaintiff was initially stationed at Gulf Coast's Hacienda facility and worked there from February 2005 to late 2007. (Dkt. No. 14 at 18, 36-40). During her time at the Hacienda facility, Plaintiff took all of her lunch breaks and was paid for all overtime she worked. (Dkt. No. 14 at 39-40). In late 2007, Plaintiff was transferred to Defendant's Darlington facility. (Dkt. No. 14 at 40). Plaintiff's time sheets from August 5, 2007 until March 29, 2008 show that she clearly indicated whether or not she took a lunch break on any particular day by noting "lunch" or "no lunch." (Dkt. No. 14, Ex. 4c at 287-293, 314-323). Plaintiff was paid for all the time she worked during this period. (Dkt. No. 14 at 54-55). As such, the Court will not consider these periods of employment, as they are temporally irrelevant to Plaintiff's claim.

#### B. Disputed Time Periods

##### 1. March 30, 2008 through August 1, 2009

After March 29, 2008, Plaintiff stopped recording whether or not she took a lunch break and instead began to subtract the thirty minutes she took for lunch from her total hours worked. (Dkt. No. 14 at 43, Dkt. No. 14, Ex. 4c at 294-312, 249-270). For example, Plaintiff asserts that if she worked an eight hour work day, Plaintiff would deduct thirty minutes for a lunch break, and only report 7.5 hours worked on her time sheet, regardless of whether Plaintiff took a lunch break or not. Plaintiff states that she was using this method to record her time because "the administration had said that they were going to take the half hour no matter what anyway, so we

5

just started writing it that way." (Dkt. No. 14 at 46). Specifically, Plaintiff claims that at some point during her time at Darlington, she did not receive overtime compensation for working through her thirty-minute lunch break because she was told to record a lunch break even if she did not actually take one. (Dkt. No. 14 at 48).

### 2. August 2, 2009 through May 12, 2010

Because Plaintiff and other MHTs were not recording the time clocked in and out for lunch breaks on their time sheets, Defendant distributed the aforementioned July Memo, which explained:

> Payroll and HR have asked that everyone show evidence of clocking in and out during their shift for lunch. It was shared that you are required to take a lunch break and must depict this break on your timesheet.
>
> For instance, if you work 7:45AM-4:15PM shift, your timesheet should show the following: 7:45AM-12:00 & 12:30PM-4:15PM. Totaling 8 hours worked.

(Dkt. No. 14, Ex. 8). Presumably as a result of this Memo, from August 2, 2009 through her termination on or about May 12, 2010, Plaintiff again changed her method of recording her lunch breaks by now explicitly documenting a thirty-minute lunch break on her time sheets, as instructed by the July Memo, for each day she worked. However, as stated above, and despite the instructions detailed in the July Memo, Plaintiff asserts that she was directed by supervisors to document a lunch break regardless of whether she actually took a lunch break or not. Plaintiff asserts that she is due overtime wage compensation based upon her alleged falsified time sheets created at the direction of her supervisors.

6

**IV. Motion to Strike Affidavits**

    **A. Standard of Review**

Rule 56(e) of the Federal Rules of Civil Procedure clearly provides that affidavits or declarations submitted in support of or in opposition to a motion for summary judgment shall be made *on personal knowledge,* shall set forth such facts as would be *admissible in evidence,* and shall *affirmatively show that the affiant is competent to testify to the matters stated therein.* Fed. R. Civ. P. 56 (e)(emphasis added). The requirements of Rule 56 make it clear that affidavits which set forth conclusory arguments rather than statements of fact based on personal knowledge are improper. *See Story v. Sunshine Foliage World, Inc.*, 120 F.Supp.2d 1027, 1030 (M.D. Fla. 2000). Sworn statements which fail to meet the standards set forth in Rule 56(e) may be subject to a motion to strike. *See Givhan v. Electronic Eng'rs Inc.,* 4 F.Supp.2d 1331, 1334 (M.D.Ala.1998). However, the Court need not strike the entire affidavit, rather it *may strike or disregard* the improper portions and consider the remainder of the testimony or statement. *Id.* at 1334 n.2.

    **B. Affidavit of Nancy Tyner**

Defendant claims that Tyner's affidavit should be stricken in its entirety because it is based on inadmissible hearsay and because Tyner was not identified by Plaintiff as a person having knowledge relevant to this claim. (Dkt. No. 29 at 5). The Eleventh Circuit has held that "when a party fails to comply with Rule 26, the district court does not abuse its discretion by striking an affidavit submitted in opposition to summary judgment, pursuant to Rule 37(c)." *Lawver v. Hillcrest Hospice, Inc.*, 300 Fed. Appx. 768, 770 (11th Cir. 2008) (citing *Cooper v. S. Co.*, 390 F.3d 695, 727-28 (11th Cir. 2004)). Here, Plaintiff has clearly failed to meet the

disclosure requirements of Federal Rule of Civil Procedure 26 by failing to identify Tyner in Plaintiff's Rule 26 disclosures, answers to interrogatories, non-expert witness disclosures, or any other disclosure during discovery. (Dkt. No. 29, Ex. 1-3). Now Plaintiff is seeking to utilize Tyner's affidavit to defeat Defendant's dispositive motion. Federal Rule of Civil Procedure 37(c)(1) provides that if a party fails to identify a witness as required by Rule 26, the party is not allowed to use such witness to supply evidence on a motion, at a hearing, or at a trial "unless the failure was substantially justified or is harmless." Here, Plaintiff claims that Tyner did not come forward as a witness with personal knowledge of the facts in question until after the discovery deadline had passed. Notably, Plaintiff uses only conclusory assertions to claim that she was justified in failing to disclose Tyner. However, the Court finds that Plaintiff was certainly in a position to know which other MHTs would have been present at the meeting(s) when the alleged lunch break directive was given. As such, Plaintiff has not substantially justified her failure to disclose Tyner as a witness in this case, and the Court recommends that Tyner's affidavit be **STRICKEN** from the record.

### C. Affidavit of Leslie Thorson

Defendant argues that the Court should also strike Thorson's affidavit in its entirety because the statements contained in the affidavit cannot be based on personal knowledge, and even if they are based on personal knowledge, they constitute inadmissible hearsay. (Dkt. No. 29 at 3-4). Further, Defendant asserts that Thorson is not competent to testify to the matters asserted in her affidavit because she was no longer employed by Defendant when the July Memo was distributed. (Dkt. No. 29 at 5).

In her affidavit, Thorson states she worked for Defendant from January 2008 through June

2009, and that "[d]uring monthly staff meetings Nicole Guincho and Allison Voisin would tell the staff members that a thirty (30) minute break <u>had</u> to be recorded each day even if we did not take a break. One of my other supervisors, Kate Kutchens, also told me I had to put this break down." (Dkt. No. 28, Ex. B). As noted above, Defendant asserts that Thorson is not competent to testify about any alleged statements regarding a directive to record a lunch break because Thorson was no longer employed by Defendant when the July Memo was distributed. The Court disagrees with Defendant's argument, and finds that Thorson's statements regarding the alleged directive to record a lunch break by Defendant's supervisors is appropriate for the Court's consideration because Thorson is asserting matters based on her own personal knowledge and observations.[3] Defendant further challenges the remaining portions of Thorson's affidavit on other grounds. However, the Court does not need to address those other arguments because the Court finds that the remaining portions of Thorson's affidavit are not material to the Court's determination of Defendant's summary judgment motion. Therefore, Thorson's affidavit pertaining to the alleged statements made by Defendant's supervisors regarding recording a lunch break should be considered by the Court.

Accordingly, it is recommended that Defendant's Motion to Strike Affidavits of Leslie Thorson and Nancy Tyner Filed by Plaintiff in Response to Defendant's Motion for Summary Judgment (Dkt. No. 29), be **GRANTED** as it relates to Nancy Tyner's affidavit, and be **DENIED** as it relates to Leslie Thorson's affidavit.

---

[3] Additionally, the alleged statements are not hearsay pursuant to Fed. R. Ev. 801(d)(2).

### V. Motion for Summary Judgment

#### A. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. *Id*. at 324. "The evidence presented cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull*, 932 F. 2d 1572, 1577 (11th Cir. 1991); *see also* Fed. R. Civ. P. 56(e).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. Moreover, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. at

248. Further, a fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

"Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Id*. (internal quotations and citation omitted).

**B. Analysis**

In order to prove a FLSA overtime violation, Plaintiff bears the initial burden of proof and must establish that Defendant suffered or permitted her to work without compensation. *Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1314. (citing 29 U.S.C. § 201 *et seq.*). Plaintiff "must demonstrate that (1) he or she worked overtime without compensation and (2) [Defendant] knew or should have known of the overtime work." *Allen*, 495 F.3d at 1314-15. (citing *Reich v. Dep't of Conservation and Nat. Res.*, 28 F.3d 1076, 1081-82 (11th Cir. 1994); 29 C.F.R. § 785.11).

Defendant moves for summary judgment on the basis that: (1) Plaintiff has failed to establish that she worked overtime that was uncompensated; and (2) Plaintiff has failed to establish that Gulf Coast had knowledge of the alleged overtime. (Dkt. No. 13 at 14, 16). Plaintiff responds and alleges the following issues of material fact: (1) whether Plaintiff was instructed to record a thirty-minute lunch break even if one was not taken; (2) whether Plaintiff took her lunch break each day; and (3) whether Defendant knew Plaintiff was working through

11

her lunch break. (Dkt. No. 28 at 3-5). Plaintiff also contends that summary judgment should not be granted because Defendant's records show Plaintiff was not paid for all times worked and that Defendant's records show Plaintiff is entitled to additional overtime compensation due to shift differentials. (Dkt. No. 28 at 6-8). These issues will be addressed in turn.

### 1. Alleged Falsified Records Regarding Lunch Breaks

#### a. Whether Plaintiff Worked Lunch Breaks Without Proper Compensation

The essence of Plaintiff's claim for unpaid work is that her time sheets are allegedly inaccurate, in that they do not represent the actual time she worked because she was directed by Defendant's supervisors to record a thirty-minute lunch break regardless of whether she took a lunch break or not. Specifically, Plaintiff asserts in her deposition that sometime after she relocated to the Darlington facility, she was told to record a lunch break even if a lunch break was not taken. (Dkt. No. 14 at 46). Further, Plaintiff also submits Thorson's affidavit, in which Thorson asserts that sometime prior to June 2009, Defendant's supervisors directed her and others to record a lunch break regardless of whether a lunch break was taken or not. (Dkt. No. 28, Ex. B.) As noted previously, neither Plaintiff nor Thorson provided any concrete testimony as to the precise date when the directive was given by Defendant's supervisors to always record a lunch break even when one was not taken. However, when examining the facts in the light most favorable to Plaintiff, based on Plaintiff's and Thorson's assertions pertaining to the alleged directive to record a thirty-minute lunch break even when one was not taken, the Court finds a genuine issue of material fact does exist as to the accuracy of Plaintiff's time sheets, and as such, a genuine issue of fact exists as to whether Plaintiff was properly compensated. In other words, in the light most favorable to Plaintiff, if Thorson was instructed directly by Defendant's

12

supervisors about the alleged lunch break directive, and observed others being instructed about the alleged lunch break directive, then a reasonable inference can be drawn that Plaintiff was also instructed at some time about the alleged lunch break directive. The Court recognizes Defendant's arguments pertaining to: (1) Plaintiff's own contradictory statements regarding when the alleged lunch break directive was given; (2) the fact that Thorson was not employed by Defendant after June 2009; (3) the allegations surrounding Plaintiff's termination, whicih include falsifying her time sheets, looking through her co-workers' personal belongings, and using the company vehicle without authorization; and (4) the clear instructions as detailed in the July Memo. (*See* Dkt. No. 13.)  However, these arguments go to the weight and credibility of the evidence, which are matters for the fact finder to determine. *Hewitt v. B.F. Goodrich*, 732 F.2d 1554, 1558 (11th Cir. 1984). As such, the Court is satisfied that Plaintiff has presented sufficient, albeit minimal, evidence which does create a genuine issue of material fact as to whether Plaintiff's time sheets were accurate, and, as a result, whether Plaintiff was compensated for all hours worked.

Once a plaintiff has demonstrated a genuine issue of material fact as to the accuracy of an employer's time records, an employee must then show the amount of unpaid work "as a matter of just and reasonable inference."  *Allen*, 495 F.3d at 1316 (citing *Anderson*, 328 U.S. at 687) (explaining that the proper inquiry is not only whether a plaintiff was paid for all hours worked, but also, whether there are facts and evidence to show "the amount and extent" of unpaid work). Although a FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation, "[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee." *Anderson v. Mt.*

*Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).  Therefore, in situations where the employer's records cannot be trusted and the employee lacks documentation, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id*. (emphasis added).  The Eleventh Circuit has noted that, if an employer has inaccurate records and the employee cannot offer convincing substitutes:

> [t]he solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work.  Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.

*Allen*, 495 F.3d at 1315-16 (quoting *Anderson,* 328 U.S. at 687 (1946)).  Further, "any inconsistency or uncertainty in an employee's testimony about the number of unpaid hours of work should be tested by cross-examination and left for the jury to consider." *Frew v. Tolt Technologies Service Group , LLC*, 2010 WL 557940, at *5 (M.D.Fla. Feb. 11, 2010) (citing *Allen*, 495 F.3d at 1317).

Here, much of the evidence concerning the amount and extent of uncompensated work comes from Plaintiff's own assertions.  Plaintiff approximates that she worked two hours of unpaid work each week for 144 weeks as a result of the directive to record lunch breaks even if they were not taken.  (Dkt. No. 29, Ex.1 at 3).  Although Plaintiff largely submits her own testimony to demonstrate the amount and extent of unpaid work,[4] the Court is satisfied that

---

[4] It must be noted that Plaintiff does submit portions of Thorson's affidavit to support her assertions related to the amount and extent of unpaid work.  As noted previously, those

14

Plaintiff has produced a just and reasonable inference as to the amount of unpaid work, and that "any inconsistency or uncertainty in [her] testimony about the number of unpaid hours of work should be tested by cross-examination and left for the jury to consider." *Frew*, 2010 WL 557940, at *5 (citing *Allen*, 495 F.3d at 1317).

### b. Whether Defendant Knew or Should Have Known of the Unpaid Work

Next, Plaintiff must prove that Defendant knew or should have known of the unpaid overtime work. *Allen*, 495 F.3d at 1315 (citing *Reich*, 28 F.3d at 1081-82). Again, as stated previously, the essence of Plaintiff's claim is that she was directed to record a thirty-minute lunch break regardless of whether she took a lunch break or not. As such, when viewed in the light most favorable to Plaintiff, if such a directive was given, then it is more than reasonable to infer that Defendant knew or should have known, based upon the nature of the directive, that Plaintiff, at times, would have performed unpaid work.

The focus of the alleged directive given by Defendant's supervisors was to *always record or document* a lunch break in the time sheet. Although in her deposition, Plaintiff states that this directive was given "after [she] had moved to Darlington,"[5] (Dkt. No. 14 at 46), she was unable to provide an exact date. Notably, Plaintiff never specified if the alleged directive gave instructions as to how the break should be recorded – just that it should be. Plaintiff changed her method of recording lunch breaks on March 30, 2008, after which time she stopped depicting the time in and time out for her lunch breaks when they were taken and would instead simply subtract thirty minutes from her total hours worked each day. As such, Plaintiff was recording a lunch

---

portions of Thorson's affidavit are challenged by Defendant, and the Court need not address those issues as they are not material to the Court's findings.

[5]Plaintiff stated in her deposition that she began work at the Darlington facility in either late 2007 or early 2008. (Dkt. No. 14 at 40.)

by the omission of thirty minutes from the total hours reported. After the July Memo was distributed, Plaintiff again changed her method of recording lunch breaks to comply with the new instructions. Specifically, Plaintiff began recording on her time sheet the time in and time out for her lunch. Based on the fact that Plaintiff, in some fashion, *always* recorded a thirty-minute lunch break after March 29, 2008 and the alleged directive given to at least Plaintiff and Thorson, the Court finds that a genuine issue of material fact exists as to whether Defendant knew or should have known that Plaintiff was performing unpaid work during the time period from March 30, 2008 through her termination on or about May 12, 2010.

### c. Statute of Limitations

Defendant argues that the proper statute of limitations for Plaintiff's claim is two years because Defendant did not act willfully. (Dkt. No. 13 at 24).

The statute of limitations in cases brought under the FLSA is ordinarily two years; however, a cause of action arising out of a willful violation of the FLSA may be commenced within three years after the cause of action accrued. 29 U.S.C. § 255(a). "A willful violation may be found when the employer disregarded the very possibility that it was violating the statute." *Allen*, 495 F.3d at 1323 (internal quotations omitted). In contrast, "[i]f an employer acts unreasonably but not recklessly in determining its legal obligation under the FLSA, then its actions should not be considered willful and the two-year statute of limitations should be applied." *Id*.

Plaintiff's asserts that: (1) Defendant told Plaintiff to record lunch breaks even if she did not take lunch breaks; and (2) Defendant knew Plaintiff was not taking lunch breaks. Because it can be reasonably inferred that Plaintiff was not taking lunch breaks and that Defendant knew

16

Plaintiff was not taking lunch breaks, these assertions, when viewed in the light most favorable to Plaintiff, create a genuine issue of material fact as to whether Defendant recklessly disregarded its obligations under the FLSA or merely acted unreasonably in failing to pay Defendant for working through lunch breaks. *See Frew*, 2010 WL 557940, at *8 (denying employer's motion for summary judgment on a statute of limitations defense where evidence existed suggesting the employer instructed the employee to record a thirty-minute lunch break even if it wasn't taken). As such, summary judgment should not be granted for Defendant on its statute of limitations affirmative defense.

### 2. Shift Differentials

Defendant contends that the Court should not consider Plaintiff's shift differential argument because Plaintiff has improperly asserted the shift differential theory as a violation of the FLSA in an attempt to defeat summary judgment. (Dkt. No. 32 at 1). Plaintiff responds and avers that the shift differential argument is not a new claim and was alleged in her Complaint. (Dkt. No. 38 at 1).

The Court finds Defendant's argument persuasive. Plaintiff's Complaint does not allege a violation of the FLSA for failure to properly calculate overtime due to shift differentials; instead, Plaintiff's factual allegations in her Complaint centered solely on the issue of the alleged uncompensated lunch breaks. (Dkt. 1 at 2-3). Specifically, Plaintiff did not include any mention of shift differentials in her explanation of the factual basis for her overtime claim. (Dkt. No. 14 at 8). Further, it is apparent that Plaintiff's shift differential theory was never revealed throughout any discovery in this case. Notably, Plaintiff's own deposition did not mention a claim for improper calculation of overtime wages based on shift differentials. Therefore, the Court finds

that Plaintiff's argument constitutes a new theory or claim and cannot be raised for the first time in an effort to defeat summary judgment. *See Edwards v. Niles Sales & Service, Inc.*, 439 F.Supp.2d 1202, 1224 (S.D.Fla. 2006) (finding that the plaintiff was not allowed to assert new bases for his race discrimination claim when the new bases were raised for the first time in response to a motion for summary judgment); *see also Hills v. Wal-Mart Stores, Inc.*, 2010 WL 1839268, at *8 n.26 (S.D.Fla. May 6, 2010).[6] Thus, it is recommended that Defendant's Motion for Summary Judgment be granted in part as to Plaintiff's shift differential theory.

### VI. Conclusion

Accordingly, based on the foregoing, it is respectfully **RECOMMENDED** that:

1. Defendant's Motion to Strike Affidavits of Leslie Thorson and Nancy Tyner Filed by Plaintiff in Response to Defendant's Motion for Summary Judgment be **GRANTED IN PART AND DENIED IN PART** as stated herein; and

2. Defendant's Motion for Summary Judgment (Dkt. No. 13) be **GRANTED IN PART** by precluding the portion of Plaintiff's claim relating to shift differentials, and **DENIED IN PART** by permitting Plaintiff's claim for any alleged uncompensated lunch breaks from March 30, 2008 through her date of termination to go forward.

**IT IS SO REPORTED** at Tampa, Florida on this 9th day of August, 2011.

---

[6] Notwithstanding the question of whether the shift differential argument is a new claim that was not alleged in her Complaint, Plaintiff's argument should also fail because Plaintiff testified that she was compensated for all hours recorded on her time sheets. (Dkt. No. 14 at 54, 55). Specifically, Plaintiff states, "I got paid for overtime. I didn't get paid for lunch because I couldn't take a lunch." (Dkt. No. 14 at 41).

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) (*en banc*).

Copies furnished to:

Hon. James D. Whittemore

Counsel of Record